WO IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

Antonio Meza, et al., )
 )
 Plaintiffs, )
 )
vs. )
 )
Wacker Neuson Sales Americas LLC, et al., )
 ) No. 2:18-cv-0574-HRH
 Defendants. )
_____)

O R D E R

Motion to Strike

Wacker Neuson Sales Americas LLC moves to strike three of plaintiffs' experts.[1] This motion is opposed.[2] Oral argument was not requested and is not deemed necessary.

Background

On July 9, 2016, Steven Wood was operating a power trowel that hit a metal stake, spun out of his hand, and struck plaintiff Antonio Meza in the head. Meza suffered a traumatic brain injury and required extensive medical treatment immediately after the accident and will continue to require extensive medical treatment for the remainder of his life. Wacker is the manufacture of the power trowel in question.

---

[1]Docket No. 82.

[2]Docket No. 86.

-1-

Meza, his wife, and children commenced this action on April 13, 2017. In their amended complaint, plaintiffs assert a strict product liability claim and a negligence claim against Wacker.

Plaintiffs' initial expert disclosure included opinions from Lanny Berke, a mechanical and safety engineer, on product defect issues including product warnings and opinions from John Buehler, an economist. Berke opined that the power trowel and the owner's manual for the power trowel did not contain adequate warnings.[3] Buehler stated that his opinion as to the present value of the future cost of care for Meza was based on a life expectancy taken from the National Center for Health Statistics' Life Tables.[4] Wacker's expert disclosure included opinions from Roger McCarthy on product warnings and opinions from Dr. Scott Kush on life expectancy. Plaintiffs' rebuttal expert disclosure included opinions from Lila Laux on product warnings and Dr. Michael D. Freeman on life expectancy.

Plaintiffs also recently disclosed Dr. Eric Foltz as a witness. Dr. Foltz is a treating physician who "is expected to testify that [his] treatment and charges were reasonable and necessitated by the incident at issue."[5]

---

[3]Exhibit A-1 at 3-4, Defendant Wacker Neuson Sales Americas LLC's Motion to Strike [etc.], Docket No. 82.

[4]Exhibit A-2 at 1, Defendant Wacker Neuson Sales Americas LLC's Motion to Strike [etc.], Docket No. 82.

[5]Plaintiffs' Eleventh Supplemental Response [etc.] at 16, Exhibit D, Defendant Wacker Neuson Sales Americas LLC's Motion to Strike [etc.], Docket No. 82.

Wacker now moves to strike Laux, Dr. Freeman, and Dr. Foltz as witnesses and to exclude them from testifying at trial.

Discussion

Wacker argues that Laux, Dr. Freeman, and Dr. Foltz were not timely disclosed. "A party that does not timely identify a witness under Rule 26 may not use that witness to supply evidence at a trial 'unless the failure was substantially justified or is harmless.'" Ollier v. Sweetwater Union High School Dist., 768 F.3d 843, 861 (9th Cir. 2014) (quoting Fed. R. Civ. P. 37(c)(1)).

As for Laux and Dr. Freeman, Wacker does not argue that plaintiffs did not disclose these experts and their reports by the deadline for expert rebuttal reports. Rather, Wacker argues that plaintiffs were required to disclose these two experts as part of their initial expert disclosure. In short, Wacker is arguing that Laux and Dr. Freeman are not proper expert rebuttal witnesses.

Wacker's argument is based on California v. Kinder Morgan Energy Partners, L.P., 159 F. Supp. 3d 1182 (S.D. Cal. 2016). Kinder Morgan involved the "remediation of the 166 acres underlying and surrounding Qualcomm Stadium and its adjoining parking lots. . . ." Id. at 1188. The City of San Diego asserted continuing public nuisance, private nuisance, and trespass claims against Kinder Morgan. Id. For these claims, the City sought the following damages:

> (1) "water damages"—including the loss of use of the Mission Valley aquifer as a source of potable water and for underground water storage; (2) "real estate damages"—based on the property's

> fair rental value for redevelopment projects; and (3) "restoration damages"—to restore the property to its original, pre-contamination condition, i.e. "background."

Id. As part of its expert rebuttal disclosure, the City disclosed two reports from Dr. Huntley, "an expert in groundwater hydrology," as "purported rebuttal to Kinder Morgan's expert hydrogeologist, Joseph Scalmanini, and Kinder Morgan's water treatment expert, Stephen Johnson." Id. at 1191. Kinder Morgan moved to exclude Dr. Huntley's opinions, arguing in part that his opinions were not rebuttal evidence. Id. The court found "that Dr. Huntley's opinion and testimony 'do not solely contradict or rebut' the Scalmanini and Johnson reports[,]" and thus "they are not proper rebuttal." Id. (quoting Fed. R. Civ. P. 26(a)(2)(D)(ii)). Kinder Morgan argued that the City's failure to disclose Dr. Huntley earlier was not substantially justified, and the court agreed. Id. The court explained that the City's

> failure to disclose a water expert, and Dr. Huntley in particular, by the March 11, 2011 initial expert disclosure deadline is indefensible. "Normally, parties are expected to present all of their evidence in their case in chief." The use of the groundwater underneath the property as a source of potable water has been a key part of this litigation from its inception.

Id. at 1191-92 (quoting Skogen v. Dow Chemical Co., 375 F.2d 692, 705 (8th Cir. 1967)). The court further explained that

> [w]hen a plaintiff's case, particularly with regard to damages, relies in part on the viability, operation, and value of a complex product, the plaintiff must expect to introduce such expert testimony—this is particularly true when the plaintiff can expect that the defendant will attempt to show that the product cannot work or has no value. Here, knowing that in its case-in-chief it would argue that the Mission Valley aquifer is viable as a source of supply and storage of groundwater, is therefore valuable, and

-4-

> entitles the City to millions in damages, the City's designation of Dr. Huntley as a mere rebuttal expert seems to be disingenuous, at best. A party with the burden of proof on an issue "should not be allowed to secretly prepare an army of 'rebuttal' experts . . . If they were allowed to do so, their work would not be subject to a direct response from any opposing expert. This immunity, combined with the element of surprise," is simply unfair.

Id. at 1192 (quoting Oracle Am., Inc. v. Google Inc., 2011 WL 5572835, *3, (N.D. Cal. 2011)). The court concluded that Dr. Huntley's "expert opinion and testimony are essential to proving the City's case-in-chief—its entitlement to 'loss of use' water damages—and are not proper rebuttal. Furthermore, the late disclosure of Dr. Huntley's opinion was neither 'substantially justified' nor 'harmless.'" Id. at 1193 (quoting Fed. R. Civ. P. 37(c)(1)).

Similarly here, Wacker argues that plaintiffs should have disclosed Laux and Dr. Freeman as part of their initial expert disclosures because these experts are offering opinions on issues on which plaintiffs carry the burden of proof. Wacker argues that any experts providing opinions on issues on which plaintiffs have the burden of proof should have been disclosed with plaintiffs' initial expert disclosures.

As an initial matter, as plaintiffs point out, the disclosure of experts in this case was not at all similar to that in Kinder Morgan. There, the City did not disclose any expert on an issue that was essential to its case-in-chief. Here, however, plaintiffs initially disclosed an expert on product warnings and an expert who offered an opinion on life expectancy. Wacker seems to be arguing that plaintiffs' rebuttal experts cannot offer opinions or testimony on these two issues, that only plaintiffs' initial experts could offer opinions or testimony on these issues. But, a rebuttal expert's report can address the same issues that were addressed by an initial

expert. 103 Investors I, L.P. v. Square D Co., 372 F.3d 1213, 1218 (10th Cir. 2004). Moreover, there is nothing improper about a party retaining a different expert to provide rebuttal testimony. See Kinder Morgan, 159 F. Supp. 3d at 1191 (citations omitted) ("[a] party need not disclose an expert within the deadline for initial expert reports, and can instead disclose an expert as a rebuttal expert, when the expert's testimony is intended solely to contradict or rebut evidence on the same subject matter identified by an initial expert witness").

The question here is whether Laux and Dr. Freeman are offering rebuttal evidence, as opposed to entirely new evidence. "'The proper function of rebuttal evidence is to contradict, impeach or defuse the impact of the evidence offered by an adverse party.'" Huawei Technologies, Co, Ltd v. Samsung Electronics Co, Ltd., 340 F. Supp. 3d 934, 996 (N.D. Cal. 2018) (quoting Matthew Enter., Inc. v. Chrysler Grp. LLC, No. 13-CV-04236-BLF, 2016 WL 4272430, at *1 (N.D. Cal. Aug. 15, 2016)).

As to the product warnings issue, Wacker disclosed McCarthy as its product warnings expert and he generally opined that, contrary to Berke's opinion, product warnings would not have made any difference in this case.[6] Laux is a "human factors psychologist" and she offered a response to two of McCarthy's assertions or opinions.[7] Laux's opinions are direct rebuttal of specific assertions or opinions by McCarthy.

---

[6]Exhibit 3 at 2-3, Plaintiffs' Response [etc.], Docket No. 86.

[7]Exhibit C-1 at 1, 3-4, Defendant Wacker Neuson Sales Americas LLC's Motion to Strike [etc.], Docket No. 82.

But Wacker points out that Berke has also prepared a rebuttal expert report in which he counters McCarthy's opinions.[8] Thus, Wacker argues that even if Laux were providing a direct rebuttal of McCarthy's assertions or opinions, she should still be stricken as a witness because her testimony would be cumulative and duplicative. Rule 403, Federal Rules of Evidence, provides that "[t]he court may exclude relevant evidence if its probative value is substantially outweighed by a danger of one or more of the following: unfair prejudice, confusing the issues, misleading the jury, undue delay, wasting time, or needlessly presenting cumulative evidence." Wacker argues that plaintiffs have not explained why they need two experts on the issue of product warnings, particularly when, according to Wacker, the two experts are offering substantially the same opinions.

At this point, the court cannot conclude that Laux's testimony would be cumulative or duplicative of Berke's rebuttal testimony. She provides testimony about the purpose of warnings from a human factors perspective, as opposed to a safety engineering perspective. This may be the same thing as Wacker contends, but the court does not have sufficient information at this time to determine that this difference is "of no consequence[.]"[9] Wacker's motion to strike Laux as a rebuttal expert is denied.

As for the life expectancy issue, as set out above, Buehler, plaintiffs' economist, based his opinion as to the present value of the future cost of care for Meza on a life expectancy taken

---

[8]Exhibit 1, Defendant Wacker Neuson Sales Americas LLC's Reply [etc.], Docket No. 89.

[9]Defendant Wacker Neuson Sales Americas LLC's Reply [etc.] at 3, Docket No. 89.

from the National Center for Health Statistics' Life Tables.[10] Based on the Life Tables, Buehler opined that "[t]he assumed normal life expectancy of Mr. Mesa is through year 2046."[11] Wacker disclosed Dr. Kush as a life expectancy expert and he opined that Meza had a shorter life expectancy than what is shown in the Life Tables. Plaintiffs then disclosed Dr. Freeman as a rebuttal expert. Dr. Freeman stated that his "report in this matter concerns my analysis of the methods and conclusions provided by [Wacker's] life expectancy expert Dr. Scott Kush. Additionally, I have provided my own evidence-based projection of Antonio Meza's survival."[12]

To the extent that Dr. Freeman is critiquing Dr. Kush's analysis and methodology, he is providing rebuttal evidence. But, Dr. Freeman's own life expectancy analysis is new evidence, not rebuttal evidence. Plaintiffs' economist chose to use the Life Tables to determine life expectancy[13] and allowing Dr. Freeman to opine as to a totally different life expectancy would result in plaintiffs' experts offering inconsistent opinions as to Meza's life expectancy, which would confuse a fact finder. Dr. Freeman may offer his opinions as to Dr. Kush's analysis and methodology. Such testimony will not be cumulative or duplicative of Buehler's

---

[10]Exhibit A-2 at 1, Defendant Wacker Neuson Sales Americas LLC's Motion to Strike [etc.], Docket No. 82.

[11]Id.

[12]Exhibit C-2, Defendant Wacker Neuson Sales Americas LLC's Motion to Strike [etc.], Docket No. 82.

[13]Plaintiffs contend that Buehler used the Life Tables as the basis for his opinions because the Arizona Jury Instructions for personal injury damages instruct jurors to assume life expectancy based on the Life Tables. See RAJI Personal Injury Damages 5.

testimony. But, Dr. Freeman cannot offer any opinions related to his own life expectancy analysis.

Finally, Wacker moves to strike Dr. Foltz as a witness. On April 29, 2019, plaintiffs identified Dr. Foltz as a witness. Dr. Foltz is a physician with Phoenix Neurology and Sleep Medicine who recently treated Meza. Plaintiffs indicated that Dr. Foltz "is expected to testify that [his] treatment and charges were reasonable and necessitated by the incident at issue."[14] Wacker contends that Dr. Foltz's treatment notes do not contain any conclusions about the reasonableness or necessity of treatment, which means his opinions about the reasonableness and necessity of Meza's treatment are expert opinions. See DeGuzman v. United States, Case No. 2:12–cv–0338 KJM AC, 2013 WL 3149323, at *2 (E.D. Cal. June 19, 2013) (treating physician "may testify as both a fact and expert witness"). Because Dr. Foltz will testify as an expert, Wacker argues that he should have been disclosed in plaintiffs' initial expert disclosure. Because he was not, Wacker argues that Dr. Foltz has been untimely disclosed and should be stricken as a witness.

Plaintiffs do not disagree that Dr. Foltz should be treated as an expert witness. But, they argue that any late disclosure of Dr. Foltz was substantially justified or harmless. To determine whether a late disclosure is substantially justified or harmless,

> courts consider "(1) the surprise to the party against whom the evidence would be offered; (2) the ability of that party to cure the surprise; (3) the extent to which allowing the evidence would

---

[14]Plaintiffs' Eleventh Supplemental Response [etc.] at 16, Exhibit D, Defendant Wacker Neuson Sales Americas LLC's Motion to Strike [etc.], Docket No. 82.

disrupt the trial; (4) the importance of the evidence, and (5) the nondisclosing party's explanation for it[s] failure to disclose the evidence."

San Francisco Baykeeper v. West Bay Sanitary Dist., 791 F. Supp. 2d 719, 733 (N.D. Cal. 2011) (quoting Dey, L.P v. Ivax Pharm., Inc., 233 F.R.D. 567, 571 (C.D. Cal. 2005)).

The late disclosure of Dr. Foltz was substantially justified and harmless. To the extent that Wacker was surprised by the disclosure of Dr. Foltz, Wacker has ample time in which to cure the surprise. Because discovery does not close in this case until September 3, 2019,[15] and no trial date is set, Wacker will have time to depose Dr. Foltz. And, plaintiffs had a good reason for not disclosing Dr. Foltz sooner, given that Dr. Foltz did not evaluate Meza until March 18, 2019 and they did not receive his records until April 9, 2019.

But, there is another problem with the disclosure of Dr. Foltz. "[A] treating physician is" not required to file a Rule 26(a)(2)(B) written report if "his opinions were formed during the course of treatment." Goodman v. Staples The Office Superstore, LLC, 644 F.3d 817, 826 (9th Cir. 2011). But, "if a treating physician is to testify as an expert, as opposed to a fact witness, he or she must be disclosed pursuant to Rule 26(a)(2)(C)." Jones v. Colorado Casualty Ins. Co., Case No. CV-12-01968-PHX-JAT, 2015 WL 6123125, at *2 (D. Ariz. Oct. 19, 2015). "Rule 26(a)(2)(C) requires any disclosure of a treating physician identify 'the subject matter on which [the physician] will testify' and 'a summary of the facts and opinions to which the [physician] is expected to testify.'" Titus v. Golden Rule Ins. Co., Case No. CV-12-00316-

---

[15]Order re Amended Stipulation to Extend Deadlines at 1, Docket No. 88.

PHX-ROS, 2014 WL 11515698, at *2 (D. Ariz. April 4, 2014) (quoting Fed. R. Civ. P. 26(a)(2)(C)). While plaintiffs' disclosure as to Dr. Foltz arguably identifies the subject matter on which he will testify, it does not contain a summary of Dr. Foltz's facts and opinions. Plaintiffs have not complied with Rule 26(a)(2)(C). But, because plaintiffs' failure to comply with Rule 26(a)(2)(C) can be remedied without causing harm to Wacker, the court will give plaintiffs an opportunity to comply. Plaintiffs shall disclose the required summary for Dr. Foltz on or before June 24, 2019, or Dr. Foltz will be stricken as an expert witness.

## Conclusion

Wacker's motion to strike[16] is granted in part and denied in part. The motion is granted as to Dr. Freeman's opinions regarding his own life expectancy analysis. The motion is otherwise denied.

DATED at Anchorage, Alaska, this 10th day of June, 2019.

/s/ H. Russel Holland
United States District Judge

---

[16] Docket No. 82.